UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RACHEL M. IDIAGHE, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:09-cv-00592-JMS-LJM |
| | ) | |
| MICHAEL ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
|     *Defendant.* | ) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Defendant Michael J. Astrue, the Commissioner of the Social Security Administration (the "Commissioner"), denied Plaintiff Rachel M. Idiaghe's application for disability insurance benefits ("DIB"). She has filed this action under 42 U.S.C. § 405(g), asking the Court to review that denial.[1] After reviewing the record, the Court remands this matter to the Commissioner for further proceedings.

### BACKGROUND[2]

Ms. Idiaghe, who was 45 years old at the time of the Commissioner's denial, claims disability due to "anxiety, depression, chronic fibromyalgia, and chronic chest pain with

---

[1] By written consent of the parties, this matter was referred to this magistrate judge for all proceedings, including for the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Dkt. No. 21.]

[2] The statement of facts in Ms. Idiaghe's brief consists largely of a string of quotations from the record, [Plaintiff's Brief 2-12], and a transcription of testimony from the hearing before the ALJ, [*id.* 12-18]. When presenting the medical evidence, the Court has previously indicated to Ms. Idiaghe's counsel that this method of presentation complicates the Court's review of this matter. *See Battle v. Astrue*, 1:08-cv-01062-JMS-LJM, Dkt. 22 at 2 n.4 (S.D. Ind. June 18, 2009). In the briefing here, counsel pushes back, stating he considers his method of presentation "more accurate than a summarization." [Plaintiff's Brief 2]. While these string quotes may be accurate, they do nothing to direct the Court to the particular evidence that may be relevant to Plaintiff's arguments. So, while counsel may ignore the Court's earlier warnings, the Court will take counsel's unhelpful statement of facts into consideration when reviewing any fee petition in this matter—as the Court has done before, *see Powell v. Astrue*, 1:08-cv-01172-JMS-LJM, Dkt. 32 at 3 (S.D. Ind. Sept. 28, 2009).

shortness of breath, left arm numbness and diasphoresis, requiring frequent clinic treatment." [R. 317.] Her alleged disability onset date is May 27, 2005. [R. 12.] Ms. Idiaghe was employed for twenty-two years as a classroom assistant for low-functioning children in the Indianapolis Public Schools system. [R. 833.][3] She testified that she was dismissed from this position in 2005 because she was missing too many days of work, approximately two to three days per week, due to pain. [R. 835.]

Beginning in September 2005, Ms. Idiaghe has made frequent trips to the hospital emergency room due to complaints of pain. [*See, e.g.* R. 182-83, 167-68, 273-75, 279-81, 293-95.] The record reflects that she was treated by Dr. Melissa Erickson, of the St. Vincent Primary Care Network, between August 2005 and March 2006. [*See* R. 146, 147, 149, 234, 235.] Dr. Erickson treated Ms. Idiaghe for her chest pain and fibromyalgia. [*See id.*] Via a "Loan Discharge Application Total and Permanent Disability" form completed on December 27, 2005, Dr. Erickson opined that Ms. Idiaghe was unable to work in any capacity due to her fibromyalgia and chronic pain. [R. 150.]

State agency consultant Dr. Sandeep Gupta conducted a medical evaluation in November 2005 and concluded, among other things, that Ms. Idiaghe's fibromyalgia interferes with her quality of life "to a significant degree." [R. 220.] State agency consultant Dr. Carrie Dixon conducted a psychological examination on Ms. Idiaghe in December 2005 and diagnosed her with depressive and somatoform NOS disorders. [R. 224.] State agency consultant Dr. Fred Kladder conducted a psychiatric review and Mental Residual Functional Capacity Assessment evaluations on January 10, 2006. [R. 200-02, 204-16.] Dr. Kladder opined that Ms. Idiaghe was moderately limited in her ability to maintain attention and concentration for extended periods of

---

[3] As a result of an apparent clerical error, the record skips from page 328 to page 829, with the hearing transcript incorrectly comprising pages numbered 829-74, instead of pages 329-374. The Court will cite to the pages as they are actually numbered in the record.

time and in her ability to complete a normal workday and workweek, performing at a consistent pace, without an unreasonable number and length of rest periods. [R. 200-01.] Dr. Kladder also opined that Ms. Idiaghe displayed a moderate degree of limitation as to her daily living activities and in maintaining concentration and persistence of pace. [R. 214.] Dr. Kladder signed a Disability Determination and Transmittal form on January 12, 2006, finding that Ms. Idiaghe was not disabled. [R. 36.] Additional state mental health and medical professionals—Dr. Sands, Dr. Larsen, and Dr. Montoya—either completed or affirmed Disability Determination and Transmittal forms finding her "not disabled." [R. 35, 36.]

Ms. Idiaghe sought treatment from various medical staff at the Wishard Hospital Clinic between May 2007 and March 2008, including Dr. Dasgutpa and Dr. Fan. [*See* R. 296, 299, 300, 304, 306, 308, 310, 316.] Dr. Dasgupta and Dr. Fan completed functional evaluation forms, apparently at Ms. Idiaghe's counsel's request, in May 2007 and February 2008, respectively. [See R. 299, 315.] Dr. Dasgupta opined that Ms. Idiaghe should "[a]void any activity that worsens her pain" [R. 299] and Dr. Fan opined that she has "limited ability to stand/walk/sit for prolonged period[s]" and that her fibromyalgia and "mood" should restrict her public interactions. [R. 315.]

Administrative Law Judge Albert J. Velasquez determined that Ms. Idiaghe suffered from fibromyalgia, noninsulin dependent diabetes mellitus, depression, anxiety, and a somatoform disorder, but that these impairments, singularly or combined, did not meet or equal any Listings. [R. 14-15.] The ALJ determined that Ms. Idiaghe has a Residual Functional Capacity ("RFC") to perform light work, which prevents her from returning to her past relevant work, but still enables her to perform other jobs available in the economy. [R. 16, 19.]

## DISCUSSION

The Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can she perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC—the claimant's physical and mental abilities considering all the claimant's impairments—which the ALJ uses at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

Ms. Idiaghe argues, and the Court agrees, that the ALJ failed to sufficiently consider favorable evidence of disability, and therefore remand is necessary. Although Ms. Idiaghe also makes other arguments, they are either unavailing or cannot be resolved until after the Commissioner first considers the evidence that the ALJ apparently ignored.

### A. Failure to Sufficiently Consider Evidence

Ms. Idiaghe provides an exhaustive list of approximately twenty-five medical records she believes the ALJ ignored, refused to consider, or placed improper weight in making his Step Three finding and RFC determination. [*See* Plaintiff's Brief 23-33.] In several respects, Plaintiff's presentation is too undeveloped as to *why* the laundry list of medical records cited supports her argument of reversal and thus need not be considered. To the extent that Plaintiff has developed cogent arguments, the Court will address them. Those arguments fall into three categories: 1) the ALJ's failure to acknowledge the evaluations and opinion of Dr. Erickson; 2) his failure to attribute proper weight to the opinions of Dr. Dasgupta and Dr. Fan; and 3) his failure to acknowledge Ms. Idiaghe's multiple emergency room visits.

### 1. The ALJ's Failure to Address the Evidence from Dr. Erickson

In his review of Ms. Idiaghe's claim, the ALJ failed to address or acknowledge the opinion of one of Ms. Idiaghe's physicians, Dr. Melissa Erickson.[4] [*See* R. 146, 147, 149, 150, 234, 235.] As was mentioned by Ms. Idiaghe in her brief, [Plaintiff's Brief 31], well-established precedent requires an ALJ to confront adverse evidence that does not support his conclusion and explain why it was rejected. *E.g.*, *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). While the Court does not expect

---

[4] Plaintiff's Brief did not assert that Dr. Erickson's opinions qualified for presumptive "controlling weight" under Social Security regulations, as was argued with regard to Dr. Fan. *See infra*, Part A.2.

5

the ALJ to cite and discuss each and every piece of medical evidence contained in the record, *see Indoranto*, 374 F.3d at 474, an ALJ "may not simply select and discuss only that evidence which favors his ultimate conclusion. Rather, an ALJ's decision must be based upon consideration of all the relevant evidence." *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) (internal quotation omitted). And while "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work," *Dixon*, 270 F.3d at 1177; *see also* 20 C.F.R. § 404.1527(e)(1), "[w]here an ALJ denies benefits, [h]e must build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

The record reflects that Ms. Idiaghe sought care from Dr. Erickson on approximately five occasions between August 2005 and March 2006.[5] [*See* R. 146, 147, 149, 234, 235.] Importantly, during Dr. Erickson's treatment relationship with Ms. Idiaghe, Dr. Erickson completed a "Loan Discharge Application Total and Permanent Disability" form for Ms. Idiaghe on December 27, 2005, opining that "fibromyalgia – chronic pain . . . prevents her from working."[6] [R. 150.] As asked on the form, Dr. Erickson also indicated that the fibromyalgia prevented Ms. Idiaghe from "being able to work and earn money in any capacity." [*Id.*] While the Court recognizes that the Commissioner need not give "*special* significance" in weighing a physician's statement that the claimant is "unable to work," *see* 20 C.F.R. § 404.1527(e) (emphasis added), this piece of evidence is still powerful. It is directly contrary to the ALJ's RFC determination that Ms. Idiaghe is able to perform light work. [R. 16.] And indeed both the

---

[5] Ms. Idiaghe indicated, in both her pre-hearing brief to the ALJ, and her brief to this Court, that she was additionally seen by Dr. Erickson on September 15, 2005, and October 7, 2005 [*see* R. 318, 319 and Plaintiff's Brief at 3, 4], but it appears that Ms. Idiaghe was actually seen by Dr. Premkumar, another doctor with the St. Vincent Primary Care Center, on those occasions. [*See* R. 229, 231.]

[6] Neither the record nor the parties' briefs indicate whether the discharge was ever granted.

relationship and form were emphasized by Ms. Idiaghe in her pre-hearing brief [R. 317, 318, 320.] Accordingly, this evidence should have been addressed by the ALJ.[7]

The Court cannot tell whether the ALJ overlooked or disbelieved Dr. Erickson's treatment of Ms. Idiaghe and her opinion as to disability. Either way, this Court is not permitted to speculate, and remand is necessary for clarification. *See Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) ("No court should be forced to engage in speculation as to the reasons for an ALJ's decision. If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand." (citations omitted)); *see also Indoranto*, 374 F.3d at 474. ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." (citations omitted)).

### 2. Weight Given to Dr. Dasgupta's and Dr. Fan's Opinions

Ms. Idiaghe also argues that the ALJ inappropriately discounted the opinions of two physicians, Dr. Dasgupta and Dr. Fan. [R. 29-31.] Ms. Idiaghe argues that the ALJ arbitrarily rejected Dr. Dasgupta's opinion stating that she should "avoid any activity that worsens her pain." [Plaintiff's Brief 30, citing R. 299.] She argues that Dr. Fan was entitled to controlling weight as a treating physician, and that the ALJ "erroneously failed to include any . . . restrictions" set forth by Dr. Fan. [*Id.*]

When reviewing medical opinion evidence, an ALJ must give controlling weight to the opinions of treating physicians regarding the nature and severity of impairments, unless the opinion lacks support or is inconsistent with other substantial evidence in the record. 20 C.F.R. §

---

[7] The ALJ cited to a single page in the record from an August 2005 checkup conducted by Dr. Erickson to describe that Ms. Idiaghe had "diffuse body pain." [R. 14, citing R. 236.] However, as the ALJ did not attribute this description to Dr. Erickson, or reference any of Ms. Idiaghe's other contacts with this physician, it cannot be said that this served to confront the adverse evidence expressed by Dr. Erickson's opinion on the loan discharge application form.

404.1527(d)(2).  If a treating source is not given controlling weight, the ALJ must "give good reasons" for the weight given.  20 C.F.R. § 404.1527(d)(2).  A treating physician is a physician who, among other requirements, has "an ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.  Opinions of non-treating physicians, and opinions of treating physicians who are not given controlling weight, are to be evaluated for supportability and consistency, among other characteristics.  *See* 20 C.F.R. § 404.1527(d).  When considering the supportability of a medical opinion, "[t]he better an explanation a source provides for an opinion, the more weight [an ALJ] will give that opinion."  20 C.F.R. § 404.1527(d)(3).

Regarding Dr. Dasgupta's opinion that Ms. Idiaghe should "avoid any activity that worsens her pain," [R. 299], the ALJ evaluated this opinion and explained his reasons for placing little weight on it.  [R. 18.]  The ALJ noted that Dr. Dasgupta had only seen Ms. Idiaghe on one occasion.  [*Id.*]  As such, the ALJ was not required to give his opinion controlling weight.  *See* 20 C.F.R. §§ 404.1527(d)(2).  He explained that he did not place any significant weight on this statement because it was "a very subjective statement," and from seeing the claimant only once, the doctor could not be familiar with the claimant's overall situation.  [R. 18.]

The ALJ's analysis of Dr. Dasgupta's opinion in no way amounts to the arbitrary rejection asserted by Ms. Idiaghe.  First, the ALJ did *not* completely reject Dr. Dasgupta; he just did not grant his opinion any "any significant … weight."  [*Id.*]  Second, the ALJ explained a lack of supportability in terms of the doctor's deficient familiarity with Ms. Idiaghe's situation. [*Id.*]

Regarding Dr. Fan's opinion, the ALJ adopted his opinion to the extent it was reasonable and gave good reason for doing so.  *See* 20 C.F.R. § 404.1527(d)(2).  Dr. Fan opined that Ms. Idiaghe has a "limited ability to stand/walk/sit for prolonged periods," and that her

8

"fibromyalgia/mood restricts public interactions." [R. 315.] Dr. Fan did not opine as to a range of time that Ms. Idiaghe could sit, stand or walk, and did not suggest to what degree interactions with the public should be restricted. In recognizing that Dr. Fan's opinion was "not very specific," [R. 18.] the ALJ "gave good reason" for assigning the opinion the limited weight that he did. 20 C.F.R. § 404.1527(d)(2); *see also* 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Additionally, the ALJ did not, as the Plaintiff argues, fail to include *any* of Dr. Fan's restrictions. [Plaintiff's Brief 31.] The ALJ placed limits on the plaintiff's ability to sit or stand for more than one hour at a time, and restricted her interaction with the public to only "superficial interactions." [R. 16.] To the extent that the ALJ *could* give "controlling weight" to an opinion lacking such specifics, the ALJ *did* incorporate limitations in his RFC determination. [*See* R. 18.]

Based on the present record, the ALJ did not commit error regarding the treatment of the opinions of Dr. Dasgupta and Dr. Fan.

### 3. Emergency Room Visits

To the extent that Plaintiff argues that the ALJ "ignored" her multiple visits to the St. Vincent hospital emergency room [Plaintiff's Brief 23-29], the Court does not agree with this assertion. The ALJ acknowledges that the "claimant has sought emergency room treatment *on several occasions* due to her complaints of pain." [R. 14, emphasis added.] This sufficiently demonstrates that he collectively considered these visits in determining Ms. Idiaghe's case. The law does not require the ALJ to cite and detail every emergency room visit made by Ms. Idiaghe in order to demonstrate that he considered all of the relevant evidence. *See Dixon*, 270 F.3d at

1176 ("[An ALJ] is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning. (citation omitted).")

### B. Other Arguments

Ms. Idiaghe asserts other arguments regarding the ALJ's Step Three, RFC, and Step Five determinations, which the Court will address to the extent possible.

#### 1. Due Process

The Court finds that Ms. Idiaghe has waived her Due Process argument for lack of a developed argument and a generally unsupported claim. *See Lachman v. Ill. State Bd. of Ed.*, 852 F.2d 290, 291 n.1 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument" (citation omitted)).

#### 2. Step Three

Ms. Idiaghe's argues that the ALJ made his Step Three denial decision without consulting a medical expert[8] as to whether her combined impairments equaled a Listing. [Plaintiff's Brief 19.] However, Ms. Idiaghe overlooks that both state mental health and medical professionals—Dr. Sands, Dr. Larsen, Dr. Kladder, and Dr. Montoya—either completed or affirmed Disability Determination and Transmittal forms finding her "not disabled." [R. 35, 36.] These signatures constitute evidence "that consideration by a physician…has been given to the question of medical equivalence." SSR 96-6p; *Schenk v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (quotation omitted). Thus, Ms. Idiaghe's argument rests upon a flawed factual premise.

Ms. Idiaghe also argues that the ALJ did not consider all the evidence relevant to Listings 12.04, 12.06, and 12.07 at Step Three. [Plaintiff's Brief 22.] In making this argument, Ms.

---

[8] The Court notes that in this section of the argument, counsel refers to a completely different claimant's name: Vanessa Macklin. [Plaintiff's Brief 20.] While the Court is not surprised that arguments previously prepared by counsel may be imported from a prior brief, the inclusion of the wrong name casts doubt as to whether the argument is actually being made with respect to the claimant here. Better care should be taken so that the Court is not left with such a concern.

Idiaghe apparently overlooks that the ALJ based his Step Three denial decision on the lack of support for the "Paragraph B" requirements for each of these Listings, and lack of support for the "Paragraph C" requirements under 12.04 and 12.06.  [R. 15-16; *see also* 20 CFR Part 404, Subpart P, Appendix 1, Listings 12.04(B),(C) 12.06(B),(C), 12.07(B).]  Ms. Idiaghe failed to make any *specific* arguments as to how any of the "ignored" or allegedly "selectively considered" evidence (including that of Dr. Erickson) would have supported these requirements. [See Plaintiff's Brief 22-28.]

The Court will not speculate as to whether the ignored treatment record and opinion reflected by Dr. Erickson supports any of the requirements set forth in Listings 12.04, 12.06, and 12.07.  However, if Dr. Erickson supports any of the "Paragraph B" or "Paragraph C" requirements, this could alter the Step Three determination, and at the very minimum, warrants treatment by the ALJ on remand.  *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("It is worth repeating that an ALJ may not ignore an entire line of evidence that is contrary to [his] findings, [sic] rather [h]e must articulate at some minimal level her analysis of the evidence to permit an informed review." (quotations, citations, and alteration omitted)).

### 3.  Additional RFC and Step Five Arguments

To the extent that Ms. Idiaghe asserts other arguments regarding the ALJ's RFC and Step Five determinations, the Court finds no error at this time.  However, in the event that remand of this decision reveals that Dr. Erickson's opinion would in fact alter the RFC determinations, it may also affect the Step Five determination.

## CONCLUSION

Because the ALJ's opinion did not sufficiently address contrary evidence in the record, the Court **VACATES** the decision denying Ms. Idiaghe benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).

April 28, 2010

                                               Jane Magnus-Stinson
                                               United States Magistrate Judge
                                               Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net